### Isham, a Slave, *v.* The State, 6 Howard, 35.

#### Murder.

On the trial of a slave on an indictment for murder, his owner was a competent witness for him.[1]

Error to the circuit court of Adams county.

Indictment against Isham, a slave, for the murder of Wilford Hoggatt. On the trial, Richard R. Sessions, the owner of Isham, was offered as a witness for the prisoner, but was excluded by the court on the ground of interest. The counsel for the accused excepted to the action of the court.

*Cox* and *Davis* for the plaintiff in error.

The chief question is, whether Sessions, the owner of the defendant, and who was offered as a witness for the prisoner, was properly excluded. The rule, excluding as a witness, a party having a direct interest in the event of the suit, does not apply to criminal cases where life is at stake. The law should be leniently construed *in favorem vitæ.*

A case somewhat similar to, but distinguishable from, this is found in the Law of Slavery, 214. *There* the master was offered as a witness *against* the slave, but objected to testify. Upon appeal it was determined that he was not a competent witness.

[1] State v. Elijah, 1 Humphreys, 102; Austin v. State, 14 Ark., 355; Pleasant v. State, 15 Ark., 625.

The question there, was simply whether he could be *compelled
to* testify. The decision beyond that point was extra judicial,
and is not authority. In North Carolina (where this case was
decided) the master, on conviction of the slave, is liable for costs.
In Mississippi, *contra*. How. v. Hutch., 179, sec. 87 ; and 171,
sec. 58. Courts in modern times, lean to the *admissibility* of
witnesses, leaving their *credibility* to the jury.

If a witness after suit brought, acquire an interest in the suit
it does not deprive the party of the benefit of his testimony. If
Sessions, therefore, had bought the defendant after the time of
the alleged crime, or after indictment, he was compelable to
testify. Shall the accidental fact, then, of ownership *before* the
time, alter the case ? In Kentucky (and some other states) the
master is allowed one half the value of his slave, and yet is a
competent witness. This is not a release of interest, but com-
pensation for the consequences of an act beyond his control.

Informers, persons robbed, and those entitled to a reward
upon conviction, are competent witnesses. The interest in those
cases is as direct, and may be as great as in the present. But
this will, it is said, rest upon *necessity*. Does not that reason
apply as strongly in the present instance ? Take this case for
example : A master and his slave are in the dwelling-house ; a
burglar enters and in the commission of his felony, is killed by
the slave. The homicide, itself, can be proved, but the circum-
stances under which it was committed cannot be proved except
by the master. Shall not the master be permitted to show that
it was done to prevent the perpetration of a felony ? 1 Mass., 7 ;
3 Ib., 82 ; 1 Dallas, 110 ; 2 Ib., 239 ; 1 Yeates, 401 ; 2 Ib., 1.
Upon indictment for forgery, the party whose signature is al-
leged to be forged, is competent to prove it a forgery. The
effect in a criminal prosecution of allowing him to show, by his
own testimony, that it is a forgery, is a discharge of the whole
amount, for the forged instrument is usually cancelled by an
order of the court, and filed among the records. See 2 Black.
Com., 93, 94 ; Litt. Sec., 177 ; Law of Slavery, 6, 229, 230 ;
Hump. Tenn. Rep., 102. On the evidence, vide 1 Leach, 263 ;
Roscoe's Crim Evi., 36, et seq., 1 McNally, 43 ; 2 Starkie's Ev.,
48 ; 1 How., 286.

*Freeman*, attorney general.

1st.   The evidence of the master was rightly excluded on account of his interest in the slave as property.   Law of Slavery, 214.

2d.   The motion for a new trial was rightly overruled because the same was based solely on the supposed insufficiency of this evidence, of which the jury were the sole judges.   1 Starkie's Ev. 474; Margin.   The jury are the sole judges of probabilities. Same authorities.   If a person not interested, and not clothed with authority, obtains confessions by threats, or otherwise, it will not render them inadmissible.   Archbold, 117.   Although a confession may be inadmissible, any discovery that takes place in consequence of the same, is admissible.   Archbold, 119.

*Montgomery & Boyd*, in reply.

From the testimony it appears that the strongest circumstantial evidence against Isham was, that his shoes and pantaloons had blood on them; and that when questioned about his shoes, he said they were in Washington, which was not true.   At this time the investigation was not only progressing, and this slave had not only been accused, but a proposition had been made in his presence to try him and hang him, and some of the company were actually punishing Dick with great severity to make him confess; and his groans and prayers were distinctly heard by all the company where Isham was.   His shoes being of a common size, and such as were usually worn by negroes and laboring white men, it was natural that he should deny they were at home, for fear they might fit the tracks found about the place where Hoggatt was hid.   When the shoes and pants were found with the marks of blood upon them, no opportunity was given Isham to explain how it came there, but those slight circumstances were considered by the company sufficient evidence of his guilt to justify immediate punishment; and but for the moderation of a brother of deceased, no doubt the defendant would have fallen a victim to the blind fury of the excited mob.

A part of this company took him to a strange quarter, away from his comrades and his master, keeping him in ignorance of the course they intended to pursue, keeping his shackles so sev-

ere as to cramp him and cause great pain, and under these circumstances he made a confession. We contend that this confession was improperly permitted to go to the jury. There is abundant evidence of *threats* of punishment, and of *actual* punishment, and no assurance that he should receive the protection of the law, to clearly show that the confessions were not *voluntary*, but the result of fear that his punishment would be protracted to an indefinite period, and perhaps end in his destruction, unless he could say or do something to divert the attention of the multitude to some other object. He had seen the effect of that kind of stratagem when used by Dick, who, by accusing him, had been relieved altogether, and the whole weight of public indignation had centered on him. Under such circumstances, nothing was more natural than for him to suppose that if he could satisfy them that he had done the act under the orders of his master, he would be excused, for the reason that he was obliged to obey his master. This case in many of its features, resembles that of Serpentine, 1 How., 256.

The slave, habitually accustomed to submit, not only to the command of his master, but to the orders of all white persons who undertake to control him; naturally timid and submissive, and frequently subjected to unjust and severe punishment upon slight suspicion, cannot be expected to show that firmness and independence when accused of crime, which is usually displayed by the weakest and most unprotected freeman. Yet the law regards the general weakness of human nature as incapable of resisting the influences of hope or fear, and will not give credit to the confessions of an individual when there is reason to believe either of these motives influenced his conduct. 1 Phil. Ev., 111; 2 Ib., 235.

As to the competence of Sessions, the master, to testify in his behalf, we refer to but one authority, which is directly in point, that on a trial for a capital offense, the master is a competent witness in favor of his slave. 1 Humphrey's Tenn. Rep., 102.

Sharkey, C. J.:

The plaintiff in error was indicted in the circuit court of Adams county, for the murder of Wilford Hoggatt. In the

course of the trial, Richard R. Sessions, the master of the slave, was offered as a witness for the prisoner; but his testimony was ruled out, on the ground of interest, to which exception was taken. After the jury returned a verdict of guilty, a motion was made for a new trial, which being overruled, the evidence was reduced to writing, and another bill of exceptions taken; and the matters set out in the bill of exceptions are now assigned for error.

The first point is entirely new in this state. As a general rule, it is undoubtedly true that no one can testify in his own favor, when he has an interest in the event of the suit. The question, however, here presented, has received direct adjudication in other states; and if those adjudications are not repugnant to principle, we shall be inclined to adopt them.

The first case to which we shall refer is the case of Elijah v. The State of Tennessee, reported in 1 Humphrey's Rep., 102. The case was in every particular like the present, the offense being capital. The prisoner was indicted for an assault with intent to commit murder. On the trial the master of the slave was offered as a witness, but the court refused to allow him to testify. This judgment was reversed in the supreme court, and the opinion of the court is based, as we conceive, upon sound and humane principles. The interest of a master in his slave was compared with the interest which the master has in the labor of his apprentice, in which case the master is always a competent witness. It was considered also as a question of common humanity. The master has the custody of his slave and owes to him protection, and it would be a rigorous rule, indeed, if the master could not be a witness in behalf of his slave. What would be the condition of the slave, if that rule, which binds him to perpetual servitude, should also create such an interest in the master as to deprive him of the testimony of that master? The hardship of such a rule would hardly comport with that humanity which should be extended to that race of people. In prosecutions for offenses, negroes are to be treated as other persons; and although the master may have had an interest in his servant, yet the servant had such an interest in the testimony of his master as will outweigh mere pecuniary con-

siderations; nor could he be deprived of the benefit of that testimony by the mere circumstance that, in a civil point of view, he was regarded by the law as property. In the decision of the court which we have mentioned, a reference was made to a case which had been decided in New Jersey in the same way.

We are referred to a case by the attorney general, reported in 2 Devereux's Reports, 543, which inclines the other way. The case is, however, not analogous, and there was also a dissenting opinion. A master was called to prove the confessions of his slave, but he objected to giving testimony, and the slave also objected to his testifying as to the confessions. The majority of the court was of the opinion that he was not bound to testify.

As the judgment, for this reason, must be reversed, we have not thought it necessary to examine the other grounds taken.

The judgment is reversed, and a new trial granted.